IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARTHROCARE CORPORATION,

        Plaintiff,

    v.

GYRUS MEDICAL, INC., GYRUS ENT,
L.L.C., and GYRUS ACMI, INC.,

        Defendants.

C.A. No. 07-729-SLR

**REDACTED -
PUBLIC VERSION**

## ARTHROCARE CORPORATION'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jparrett@mnat.com

*Attorneys for Plaintiff
ArthroCare Corporation*

*Of Counsel*:

Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
(202) 682-7000
adam.strochak@weil.com

Jared B. Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
jared.bobrow@weil.com

Nicholas Groombridge
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
nicholas.groombridge@weil.com

Kevin Kudlac
Cabrach J. Connor
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX 78759
(512) 349-1930
kevin.kudlac@weil.com
cabrach.connor@weil.com

Original Filing Date:  February 19, 2008

Redacted Filing Date:  February 25, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS .................................................... 1

SUMMARY OF ARGUMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................... 5

    A.    Weil Gotshal Is Adverse to Gyrus Group and Defendants ................................... 5

    B.    Weil Gotshal Did Not Have Access to Any Information That Prejudices
        Defendants ............................................................................................................ 6

    C.    Weil Gotshal Took Prompt and Appropriate Measures to Screen the
        ArthroCare Team from Any Gyrus Group Information ....................................... 7

    D.    The Acquisition Agreements Create No Attorney-Client Relationship
        Between Weil Gotshal and Defendants ............................................................... 8

ARGUMENT ...................................................................................................... 10

    A.    Disqualification Is Disfavored ........................................................................... 10

    B.    Weil Gotshal's Representation of ArthroCare Does Not Violate Model
        Rule 1.7 ............................................................................................................... 11

        1.    Model Rule 1.7(a)(1) Does Not Apply Because Neither Defendants
                Nor Gyrus Group is a Client of Weil Gotshal ........................................... 12

        2.    Weil Gotshal's Representation of ArthroCare is Not Materially
                Limited Under Model Rule 1.7(a)(2) ........................................................ 17

        3.    Weil Gotshal Has No Fiduciary Duties to Defendants ............................ 19

        4.    The Requirements of Model Rule 1.7(b) Are Satisfied ............................ 21

    C.    ArthroCare Would Be Prejudiced by Disqualification ....................................... 22

CONCLUSION .................................................................................................. 24

i

# TABLE OF AUTHORITIES

## CASES

*Akerly v. Red Barn Sys., Inc.,*
    551 F.2d 539 (3d Cir. 1977)..................................................................................11

*ArthroCare Corp. v. Ethicon, Inc.,*
    No. 98-cv-609 (N.D. Cal.) ......................................................................................6

*ArthroCare Corp. v. Smith & Nephew, Inc.,*
    310 F. Supp. 2d 638 (D. Del. 2004), 406 F.3d 1365 (Fed. Cir. 2005)................1, 17

*Carlyle Towers Condominium Ass'n v. Crossland Sav., FSB,*
    944 F. Supp. 341 (D.N.J. 1996) .........................................................................17, 20

*In re Congoleum Corp.,*
    426 F.3d 675 (3d Cir. 2005)...................................................................................18

*Conley v. Chaffinch,*
    431 F. Supp. 2d 494 (D. Del. 2006)................................................................2, 10-11

*Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.,*
    142 F. Supp. 2d 579 (D. Del. 2001)......................................................................22

*In re Hechinger Inv. Co. of Delaware,*
    2004 U.S. Dist. LEXIS 26725 (D. Del. Dec. 1, 2004)...........................................15

*INA Underwriters Co. v. Rubin,*
    635 F. Supp. 1 (E.D. Pa. 1983) .............................................................................15

*Integrated Health Servs. v. THCI Co.,*
    327 B.R. 200 (D. Del. 2005)...............................................................................3, 14

*Jedwab v. MGM Grand Hotels, Inc.,*
    No. 8077, 1986 Del. Ch. LEXIS 383 (Del. Ch. Mar. 20, 1986) ..............................14

*Morrison Knudsen Corp. v. Hancock, Rothert & Banshoft LLP,*
    69 Cal. App. 4th 223 (1999) .............................................................................19-20

*In re Muma Servs., Inc.,*
    286 B.R. 583 (Bankr. D. Del. 2002) ......................................................................22

*Nemours Found. v. Gilbane,*
    632 F. Supp. 418 (D. Del. 1986)....................................................................... Passim

*NetRatings, Inc. v. NPD Group, Inc.,*
    No. 03-295, 2003 U.S. Dist. LEXIS 23543 (D. Del. Dec. 11, 2003) .................11, 17

*O'Neill v. GlobeSpan, Inc.*,
    No. 01-2936, 2001 U.S. Dist. LEXIS 23113 (C.D. Cal. Sept. 19, 2001) ...............................20

*Pennwalt Corp. v. Plough, Inc.*,
    85 F.R.D. 264 (D. Del. 1980) ....................................................................... 17-18

*In re Teleglobe Comm. Corp.*,
    493 F.3d 345 (3d Cir. 2007)...........................................................................14

*United States v. Miller*,
    624 F.2d 1198 (3d Cir. 1980)...........................................................................10

*Vanderveer Group, Inc. v. Petruny*,
    No. 93-3677, 1993 U.S. Dist. LEXIS 13614 (E.D. Pa. Aug. 13, 1993) ...............................17

*Zirn v. VLI Corp.*,
    No. 9488, 1990 Del. Ch. LEXIS 135 (Del. Ch. Aug. 13, 1990)............................................14

## NATURE AND STAGE OF PROCEEDINGS

ArthroCare Corporation ("ArthroCare") submits this answering brief in opposition to the Motion of Defendants Gyrus Medical, Inc., Gyrus Ent, L.L.C., and Gyrus ACMI, Inc. (collectively, "Defendants") to Disqualify Plaintiff's Counsel (the "Motion," D.I. 15). Weil, Gotshal & Manges LLP ("Weil Gotshal") has represented ArthroCare for over a decade in multiple lawsuits concerning the patent at issue in this case. The Court is familiar with the long history of litigation over this patent, and Weil Gotshal's involvement on behalf of ArthroCare. *See ArthroCare Corp. v. Smith & Nephew, Inc.*, 310 F. Supp. 2d 638 (D. Del. 2004) (upholding jury verdict and, *inter alia*, denying defendant's motion for new trial in a case where ArthroCare was represented by Weil Gotshal), *aff'd in part, rev'd in part, and vacated in part*, 406 F.3d 1365 (Fed. Cir. 2005).

## SUMMARY OF ARGUMENT

Neither Defendants nor their English parent company, Gyrus Group PLC ("Gyrus Group"), have ever been clients of Weil Gotshal. Gyrus Group was separately represented by counsel and adverse to Weil Gotshal client Olympus Corporation ("Olympus") in a transaction where Olympus acquired Gyrus Group. Notwithstanding Weil Gotshal's *adverse* relationship to Gyrus Group in the transaction, Defendants now assert the existence of a disqualifying conflict based on (1) Weil Gotshal's alleged receipt of confidential and/or privileged information relating to the subject matter of this litigation from Gyrus Group; (2) an alleged "common interest" between Weil Gotshal's client Olympus and Defendants' parent company, Gyrus Group (a non-party to this litigation); and (3) an ostensible duty of "trust" that Weil Gotshal owes to Defendants. All three theories fail as a matter of fact and law.

A party seeking disqualification of counsel must "clearly show that continued representation would be impermissible." *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (citation omitted).    Defendants do not come close to meeting this heavy burden. Disqualification motions are disfavored, and the motion is particularly inappropriate here where there never was any attorney-client relationship between Weil Gotshal and Defendants' parent. Gyrus Group has separate counsel in the transaction, the Weil Gotshal lawyers representing ArthroCare in this litigation and the lawyers on the Olympus deal team are entirely different, no sensitive information relating to the patent infringement issues in this litigation ever was shared with Weil Gotshal, and Gyrus Group asked for and received assurances of confidentiality from Weil Gotshal and continued to share information with full knowledge of Weil Gotshal's concurrent representation of ArthroCare.

The motion stretches the boundaries of the conflict of interest rules beyond recognition.    Because neither Defendants nor their English corporate parent are, or have ever been, clients of Weil Gotshal, and therefore are not covered by Model Rule 1.7(a)(1), Defendants assert that they share a "common interest" with Weil Gotshal client Olympus – consummation of the merger – and therefore Weil Gotshal owes them a duty beyond compliance with the contractual confidentiality protections agreed upon by the parties.    The Common Interest Agreement between Weil Gotshal and Allen & Overy (Gyrus Group's counsel), however, expressly forecloses this, providing that "under no circumstances" shall it "create a duty from or relationship between any counsel and anyone other than the Client of that counsel." D.I. 15, Ex. 6, at ¶ 7.

Moreover, the common goal of Olympus and Gyrus Group in obtaining regulatory approval and consummating the acquisition does not make Gyrus Group (or Defendants) clients

of Weil Gotshal.  This Court rejected exactly this theory in a similar case, holding that joint pursuit of regulatory approvals necessary to consummate a business transaction does not make the acquiror's counsel also counsel for the target of the acquisition.  *Integrated Health Servs. v. THCI Co.,* 327 B.R. 200, 206 (D. Del. 2005) (denying motion to disqualify counsel).

Defendants do not identify any actual prejudice arising from Weil Gotshal's representation of Olympus in the acquisition.  There was no overlap of the lawyers working on this litigation and the Olympus deal, and Defendants do not allege any.  Defendants merely argue that the Weil Gotshal lawyers working on the acquisition obtained unspecified "confidential information and attorney work product" potentially relevant to this lawsuit in the course of due diligence.  As demonstrated in the Declaration of Ian Hamilton, however, the deal team at Weil Gotshal received only very limited information on intellectual property matters and nothing that has any bearing on whether Defendants are liable for any infringement of the patent at issue here. The Weil Gotshal deal team (based primarily in London) shared none of the information it received with any of the patent litigators (based in Silicon Valley, New York and Austin) representing ArthroCare, and did not even know of the potential ArthroCare lawsuit until after it was filed on November 14, 2007.  When the deal team was advised of the lawsuit, it immediately took steps to ensure that Weil Gotshal would not receive from Gyrus Group any confidential information relating to the lawsuit, bringing in another law firm to represent Olympus on this issue and to conduct any required due diligence.  Weil Gotshal has complied scrupulously with all applicable confidentiality obligations under the August 14, 2007 confidentiality letter (D.I. 15, Ex. 5), the Common Interest Agreement (*id.*, Ex. 6) and the Implementation Agreement (*id.,* Ex. 7), and has not used any due diligence information for any purpose except evaluation and consummation of the acquisition.  Weil Gotshal also promptly implemented screening

3

procedures to ensure that no information would be exchanged between the deal team and the patent litigation team.

Weil Gotshal fully informed each of its clients, ArthroCare and Olympus, of the circumstances, and advised Olympus that it intended to continue to represent ArthroCare in the lawsuit after closing of the merger. Olympus continued to use Weil Gotshal's services to conclude the transaction. Gyrus Group, after being fully advised of Weil Gotshal's role in the patent litigation and requesting and receiving assurances of confidentiality and implementation of a screen between the deal team and the litigation team, continued to share information. ArthroCare has executed a written consent to Weil Gotshal's continued representation. Accordingly, even if the Court were to find a conflict of interest under Model Rule 1.7(a), it would not be a basis for disqualification because all the conditions of Model Rule 1.7(b) are satisfied.

As a result, there is no basis to deprive ArthroCare of its choice of counsel who have previously litigated this patent in several litigations on its behalf, including through a Federal Circuit appeal. Defendants have not identified *any* information provided to Weil Gotshal that would prejudice them in this lawsuit, and even if such information had been shared in connection with the acquisition, Weil Gotshal promptly and effectively screened the ArthroCare team from it. The facts here demonstrate no basis for disqualification and permit no conclusion except that Defendants filed the Motion in a tactical attempt to disadvantage ArthroCare. The Motion should be denied.

## STATEMENT OF FACTS

### A.    Weil Gotshal Is Adverse to Gyrus Group and Defendants

Weil Gotshal is an international law firm with more than 1,200 lawyers in 19 offices in the United States, Europe and Asia. Declaration of Jared Bobrow ¶ 2.[1] The firm has represented ArthroCare in connection with United States Patent No. 5,697,882 (the "'882 patent") since 1997. *Id.* at ¶ 3. The office of record for the ArthroCare representation is Weil Gotshal's Silicon Valley office and the matter is staffed with patent litigators in the firm's Silicon Valley, New York, and Austin offices. *Id.* at ¶ 2.[2] In January 2006, Weil Gotshal began representing ArthroCare with respect to potential patent infringement claims against Defendants.

On August 6, 2007, Weil Gotshal opened a new matter for its client Olympus, which was contemplating an acquisition of Gyrus Group. Weil Gotshal accepted this representation after determining that Gyrus Group was adverse to Weil Gotshal clients in both the ArthroCare and the Olympus matters. The office of record for the Olympus/Gyrus Group matter was London and the matter was staffed primarily out of the London office, although as is typical in large corporate transactions the deal team called on lawyers from other offices where their expertise was needed, including antitrust and employee benefits lawyers in New York and Washington. Declaration of Ian Hamilton at ¶ 3. There was never any overlap of Weil Gotshal personnel on the ArthroCare and Olympus matters. Bobrow Decl. at ¶ 8.

---

[1]    The Declarations of Jared Bobrow, Ian Hamilton and Debra J. Pearlstein are being filed concurrently herewith.

[2]    To ensure compliance with all confidentiality requirements, this Answering Brief was prepared by a partner in Weil Gotshal's Washington office who had not previously worked on either the ArthroCare or the Olympus matter.

### B. Weil Gotshal Did Not Have Access to Any Information That Prejudices Defendants

Defendants overstate the amount of information to which Weil Gotshal had access, mischaracterize its nature, and incorrectly describe its distribution among Weil Gotshal lawyers. Gyrus Group was a public company, so substantially all of its financial information, and much information about its businesses and products, was publicly available – for example, on its web site (www.gyrusacmi.com). Weil Gotshal requested that Gyrus Group provide access to certain documents for due diligence purposes and those documents were made available in a data room. Weil Gotshal was permitted to visit the data room, but not to make copies. Hamilton Decl. at ¶ 4. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

The Weil Gotshal Olympus team in London participated in exactly one due diligence meeting at which intellectual property issues were discussed, among many other topics of no bearing on this lawsuit.[3]  The due diligence meeting took place on November 13, 2007, and lasted a little more than an hour. *Id.* ¶ 6. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  *Id.* at ¶ 6.  Weil Gotshal represented ArthroCare in that prior litigation, captioned *ArthroCare Corp. v. Ethicon, Inc.*, No. 98-cv-609 (N.D. Cal.).  Weil

---

[3]    Defendants misleadingly refer to this meeting as an "example" of multiple discussions. D.I. 15 at 3. In fact, it was the only due diligence meeting with Gyrus personnel at which Weil Gotshal attorneys were present.

6

Gotshal's prior representation of ArthroCare, a licensor of technology to Gyrus Group, surely must have been known to Robert Gadsden, Gyrus Group's Vice President of Group Legal and Intellectual Property Affairs, whose declaration states that his responsibilities include "coordinating the legal and intellectual property aspects of the business" and "managing the company's intellectual property portfolio." Decl. of Robert Gadsden, D.I. 15, Ex. 2, ¶ 2.

### C.    Weil Gotshal Took Prompt and Appropriate Measures to Screen the ArthroCare Team from Any Gyrus Group Information

Defendants insinuation that the timing of Weil Gotshal's due diligence efforts on the Olympus matter in November 2007, and the filing of this lawsuit on November 14, 2007, were not unrelated (D.I. 15, at 4-5) is unfounded. The Olympus team had no knowledge of the ArthroCare lawsuit until after it was filed; indeed, they first learned of it when Gyrus Group's London counsel, Allen & Overy, called it to their attention. Hamilton Decl. ¶ 7.[4] Upon learning of the ArthroCare lawsuit, the Weil Gotshal London team immediately declined to participate in any way in evaluating the lawsuit or its implications for the transaction. Weil Gotshal informed Olympus of the ArthroCare lawsuit and the firm's representation of ArthroCare and advised Olympus that Weil Gotshal would continue representing ArthroCare. Olympus did not object, arranged for another law firm to conduct any necessary due diligence regarding the lawsuit, and continued using Weil Gotshal to complete the acquisition. *Id.* at ¶ 8.

Allen & Overy requested that Weil Gotshal confirm its compliance with confidentiality restrictions on the use of Gyrus Group information relating to the patent dispute. Weil Gotshal confirmed by email that: (1) it did not believe it had received any confidential

---

[4]    Likewise, the ArthroCare litigation team had no knowledge of the Olympus acquisition until after this lawsuit was filed. Bobrow Decl. ¶ 6.

information relating to the patent dispute; (2) it would comply with all confidentiality restrictions regarding information or documents obtained from Gyrus Group relating to the patent dispute should it ever receive any such information; and (3) it would ensure that effective screens were put in place to prevent any information relating to the patent dispute from being provided to anyone working on the ArthroCare representation.  D.I. 15, Ex. 8.[5]  Weil Gotshal asked Allen & Overy to identify any Gyrus Group information relating to the patent infringement issues that previously had been shared with Weil Gotshal, but Allen & Overy never did so.  Hamilton Decl. ¶ 11.  And to this day Defendants have not identified any specific information that Weil Gotshal received before this lawsuit was filed that relates to the patent infringement claims or any defenses or strategies Defendants might invoke.

No information gathered by Weil Gotshal in the due diligence process was shared with any member of the ArthroCare team.  And although some information pertinent to antitrust issues and employee benefits matters was forwarded to attorneys in Weil Gotshal's New York office, none of this information related to the ArthroCare lawsuit and none of it was shared with any member of the ArthroCare team.  Hamilton Decl. ¶ 14; Declaration of Debra J. Pearlstein ¶ 6.

### D.    The Acquisition Agreements Create No Attorney-Client Relationship Between Weil Gotshal and Defendants

Defendants point to three agreements to support their assertion of a "common interest" that they claim created a "trust" relationship between their parent and Weil Gotshal sufficient to warrant disqualification.  First, a confidentiality letter (D.I. 15, Ex. 5), dated August

---

[5]    The actual screen imposed by Weil Gotshal was broader, ensuring that there was no exchange between the deal team and the patent litigation team of *any* documents or information relating to either the acquisition or the litigation.

14, 2007, provides that information exchanged in the due diligence process will be used only for purposes of the transaction under consideration.  Weil Gotshal has complied fully with this requirement and has not shared any Gyrus Group information with any member of the ArthroCare team or used such information for any purpose except the acquisition.  Hamilton Decl. ¶ 14.  The confidentiality letter expressly provides that Olympus and its counsel, Weil Gotshal, will promptly return or destroy any confidential information upon request.  Gyrus Group has not made any such request.  *Id.* at ¶ 11.

Second, on November 12, 2007, Weil Gotshal and Allen & Overy (Gyrus Group's counsel) entered into a Common Interest Agreement (D.I. 15, Ex. 6).  The Common Interest Agreement is a typical device in mergers and acquisitions designed to protect communications to and from counsel for the parties from discovery by third parties in the event of a dispute *relating to the proposed transaction.*  Pearlstein Decl. ¶ 4.  The purpose of the Common Interest Agreement was to allow counsel for Olympus and Gyrus Group to share information, such as drafts of Hart-Scott-Rodino Antitrust Improvement Act filings, in furtherance of their limited common interest in completing the antitrust review and consummating the acquisition without fear that such disclosures might be asserted as a waiver of applicable privileges in any litigation arising out of the transaction.  The Common Interest Agreement expressly states that it creates no attorney-client relationship between Weil Gotshal and Gyrus Group.  D.I. 15, Ex. 6, at ¶ 7.

Third, on November 19, 2007, five days *after* Gyrus Group learned that Weil Gotshal represented ArthroCare in this lawsuit, Olympus and Gyrus Group entered into an Implementation Agreement (D.I. 15, Ex. 7).[6]  The Implementation Agreement contractually

---

[6]     Defendants incorrectly assert that the Implementation Agreement "explicitly covers all subsidiaries of Gyrus Group, including the three Gyrus Defendants."  D.I. 15 at 6.  In fact, only Gyrus Group PLC (defined as "Gyrus") is a party to the Implementation

binds each party to use all "reasonable endeavors" to effectuate the contemplated acquisition. It does not align the interests of Olympus and Gyrus Group; indeed, it expressly provides for circumstances in which the parties might not pursue what Defendants characterize as a "friendly" acquisition, such as receipt by Gyrus Group of a competing offer. D.I. 15, Ex. 7 ¶ 10.3.

After November 16, 2007, when Gyrus Group's counsel requested and received confirmation from Weil Gotshal that it would comply with confidentiality restrictions and screen the ArthroCare team from any information exchanged in furtherance of the acquisition, Gyrus Group continued to share information with Weil Gotshal to facilitate antitrust review and, ultimately, the closing of the acquisition. Pearlstein Decl. ¶ 5, Hamilton Decl. , at ¶ 17.

## ARGUMENT

### A.    Disqualification Is Disfavored

Motions to disqualify are disfavored. *See, e.g.,* Conley *v.* Chaffinch, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (*citing* Cohen *v.* Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994)). The Third Circuit has held that:

> A court should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule. It should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.

*United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir. 1980). "[T]he moving party has the burden to prove by clear and convincing evidence that disqualification is mandated by the existence of a

---

Agreement. *Id.* Ex. 7 at 1. "Gyrus Group" is separately defined to include all subsidiaries for limited purposes, but the Implementation Agreement does not bind them to do anything. *Id.* at ¶ 1.1 (definition of "Gyrus Group"); *see also id.* at ¶ 17 (agreement confers no rights on any person who is not a party).

conflict of interest that will prejudice the fairness of these proceedings." *NetRatings, Inc. v. NPD Group, Inc.*, No. 03-295, 2003 U.S. Dist. LEXIS 23543, at *2 (D. Del. Dec. 11, 2003).

In considering motions to disqualify, courts have long refused to adopt a *per se* rule of disqualification and instead engage in a "careful sifting of all of the facts and circumstances." *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 543 (3d Cir. 1977). "The party seeking disqualification must 'clearly show that continued representation would be impermissible.'" *Conley*, 431 F. Supp. 2d at 496. "Vague and unsupported allegations are not sufficient to meet this standard." *Id.* Disqualification will be ordered "only reluctantly" because of the immediate "adverse effect on the client of separating him from counsel of his choice," and because disqualification motions are often made for "tactical reasons, and even when made in the best of faith inevitably cause delay." *Nemours Found. v. Gilbane*, 632 F. Supp. 418, 427 (D. Del. 1986) (internal citations omitted).

Defendants have not satisfied their heavy burden in seeking disqualification. They have not shown that Weil Gotshal's representation of ArthroCare is "clearly impermissible" under any ethical rule, and they have not identified any actual unfair prejudice or disadvantage that would warrant depriving ArthroCare of counsel who have represented the company with respect to the patent at issue for more than a decade. Nonetheless, they seek to deprive ArthroCare of the "counsel of [its] choice." *Nemours*, 632 F. Supp. at 427.

### B.    Weil Gotshal's Representation of ArthroCare Does Not Violate Model Rule 1.7

The only ethical rule on which Defendants rely is Rule 1.7 of the ABA Model Rules of Professional Conduct ("Model Rules"). That rule states:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

11

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Thus, to sustain their burden Defendants must show that Weil Gotshal concurrently is representing two clients whose interests are "directly adverse" or that Weil Gotshal's representation of ArthroCare here is "materially limited" by Weil Gotshal's responsibilities to another client or a third party, and in either case that the exceptions of Rule 1.7(b) are not satisfied.

### 1.    Model Rule 1.7(a)(1) Does Not Apply Because Neither Defendants Nor Gyrus Group is a Client of Weil Gotshal

Neither Defendants nor their English parent company are "clients" of Weil Gotshal and Model Rule 1.7(a)(1) thus is inapplicable by its own terms. Because they cannot claim actual representation, they assert that they share a "common interest" with Weil Gotshal client Olympus – consummation of the merger – that warrants disqualification. This is contradicted by the plain language of the agreements that Defendants cite as support. The

Common Interest Agreement between Weil Gotshal and Allen & Overy expressly provides that "under no circumstances" shall the agreement "create a duty or relationship between any counsel and anyone other than the Client of that counsel." D.I. 15, Ex. 6, at ¶ 7. The agreement further provides that it "shall not be used offensively or defensively in any litigation between signatories to this Agreement (other than as covered by this Agreement) involving any issue relating to or deriving from this transaction, *nor will any of the parties claim that any counsel is disqualified in such litigation by reason of the joint defense effort.*" *Id.* at ¶ 8 (emphasis added). Thus, even if the Court were to accept Defendants' assertion that this patent infringement case and acquisition transaction involve "overlapping subject matter," the Common Interest Agreement cannot be asserted as a basis for disqualification.

Further, the Implementation Agreement merely binds each party to use all "reasonable endeavors" to effectuate the contemplated acquisition. It does not align the interests of Olympus and Gyrus Group; and it does not make Gyrus Group or Defendants clients of Weil Gotshal. Neither of the agreements creates an attorney-client relationship between Weil Gotshal and Gyrus Group or Defendants.

The "common interest" of Olympus and Gyrus Group in obtaining regulatory approval and consummating the acquisition also does not render Gyrus Group (or Defendants) a client of Weil Gotshal. The Third Circuit recently cautioned that courts "must be careful not to imply joint representations too readily."

> What the Court takes exception to is [plaintiff's] effort . . . to argue, in effect, that a joint representation of Party A and Party B may somehow arise through the expectations of Party B alone, despite Party A's views to the contrary. This position is untenable, because it would allow the mistaken (albeit reasonable) belief by one party that it was represented by an attorney . . . to serve to infiltrate the protections and privileges afforded to another client.

*In re Teleglobe Comm. Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) (citation omitted). There is no basis to infer joint representation where the posture of the parties as acquiror and target is in fact one of adversity for the purposes of the rules of professional conduct. *See Zirn v. VLI Corp.*, No. 9488, 1990 Del. Ch. LEXIS 135, at *17-22 (Del. Ch. Aug. 13, 1990) (refusing to extend the common interest privilege to communications between the parties to a merger agreement because "the companies clearly had adverse interests"); *Jedwab v. MGM Grand Hotels, Inc.*, No. 8077, 1986 Del. Ch. LEXIS 383, at *1-2 (Del. Ch. Mar. 20, 1986) (same).

   In a similar case, this Court held that a short-term common interest in seeking regulatory approvals necessary to complete a business transaction "does not mean that the party's attorney (or law firm) who undertakes the task of obtaining regulatory approval is representing both parties in the overall transaction, or even in obtaining approval." *Integrated Health Servs.*, 327 B.R. at 206 (holding that the law firm had not violated Rule 1.7). The Court noted that "[i]f that was the case then [the law firm] would have a current conflict of interest because it would be representing parties that were directly adverse – a landlord and a tenant." *Id.* Undertaking a transactional representation where both parties have a common interest in consummating a deal simply does not make a law firm counsel to both parties.

   Defendants cite *Nemours Foundation v. Gilbane,* 632 F. Supp. 418 (D. Del. 1986), as support for the proposition that common interest representation is a sufficient basis for attorney disqualification. D.I. 15 at 13. As a threshold matter, the court in *Nemours* denied disqualification, so the case provides little support for Defendants' position. But even to the extent that it suggests that common interest representation might create a conflict of interest, the *Nemours* case is readily distinguishable from this one. In *Nemours,* the lawyer representing Co-Defendant A obtained access to sensitive information of Co-Defendant B in the course of the

representation. The lawyer then joined another law firm that sought to represent a client adverse to Co-Defendant B in exactly the same litigation. The Court ruled that Co-Defendant B was a "client" of the lawyer because it had "disclosed information acting on the belief and expectation that such submission was made in order for [the lawyer's firm] to render legal service to [Co-Defendant B]." 632 F. Supp. at 424. In contrast, Weil Gotshal never rendered any legal services to Gyrus Group or to Defendants, and they could have no expectation that Weil Gotshal would do so given the express provisions of the Common Interest Agreement stating that no lawyer-client relationship existed between Weil Gotshal and Gyrus Group. Further, the two representations in *Nemours* were in the same litigation. In this case Weil Gotshal's representation of Olympus in the acquisition is unrelated to this patent litigation. To the extent the patent litigation was one item among many that might be investigated as part of due diligence activities, Olympus had separate counsel for that task.

     The *Nemours* court ultimately denied disqualification, finding that the law firm had "established an effective screening mechanism" to ensure that the conflicted lawyer did not share any confidential information with his colleagues. 632 F. Supp. at 428-29; *see also INA Underwriters Co. v. Rubin*, 635 F. Supp. 1 (E.D. Pa. 1983) (refusing to disqualify firm and approving of screening mechanism); *In re Hechinger Inv. Co. of Delaware*, 2004 U.S. Dist. LEXIS 26725, at *6 n.1 (D. Del. Dec. 1, 2004) (declining to disqualify law firm whose current partner had previously served as corporate counsel for Hechinger and instead "imposing the 'Chinese Wall' that should have been imposed in the first instance when the [law firm] was first retained"). Similar circumstances compel the denial of the disqualification motion here. The two Weil Gotshal teams working on the ArthroCare and Olympus representations did not share *any* information. Indeed, the Olympus team did not even know about the ArthroCare lawsuit

until after it was filed. The firm then immediately implemented a screening process to ensure that the two teams did not share any information.[7] Defendants do not even allege that the screen was ineffective, nor could they because there is not one iota of evidence to support such a claim.

Defendants are mistaken in their contention that, upon the closing of the Olympus/Gyrus Group transaction, Weil Gotshal "will be, essentially, representing both sides in this lawsuit." D.I. 15 at 13 & n.5. First, Olympus has not objected to the representation, and indeed continued to use Weil Gotshal to consummate the merger after having been advised that Weil Gotshal would continue to represent ArthroCare in the present litigation. Second, representation of Defendants' indirect parent company on unrelated matters does not equate to representation of Defendants in this lawsuit. Comment 34 to Model Rule 1.7 ("A lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary"); *see also* ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 390 (1995) ("The Model Rules of Professional Conduct do not prohibit a lawyer from representing a party adverse to a particular corporation merely because the lawyer (or another lawyer in the same firm) represents, in an unrelated matter, another corporation that owns the potentially adverse corporation."). This Court previously has declined to disqualify counsel from representations adverse to corporate affiliates of their clients. *See NetRatings*, 2003 U.S. Dist. LEXIS 23443, at *5 (declining to

---

[7]    Weil Gotshal took prompt and effective measures as soon as the issue was brought to its attention, and because no information was shared between the Olympus and ArthroCare teams at any time, these efforts were not "belated," as Defendants claim. D.I. 15 at 13. Defendants also misstate the holding in *Nemours* to require that screened attorneys be barred from sharing in any fees from the conflicted case. There is such no requirement in the Model Rules and, in any event, Weil Gotshal's annual revenues are sufficiently large that the financial implications of any fee sharing among partners on the ArthroCare and Olympus teams is *de minimis*.

disqualify plaintiff's counsel who had previously served as general counsel of defendant's subsidiary); *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 264 (D. Del. 1980) (declining to disqualify a firm from a representation adverse to a sister affiliate of the firm's corporate client). Other courts in this Circuit have reached the same conclusion. *See Vanderveer Group, Inc. v. Petruny*, No. 93-3677, 1993 U.S. Dist. LEXIS 13614, at *8-10 (E.D. Pa. Aug. 13, 1993) (rejecting claim that suit against corporate parent of a client was "directly adverse" to the client); *Carlyle Towers Condominium Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 352 (D.N.J. 1996) (refusing to disqualify law firm from representation adverse to a corporate relative of defendant).

### 2. Weil Gotshal's Representation of ArthroCare is Not Materially Limited Under Model Rule 1.7(a)(2)

Because Defendants are not "clients" of Weil Gotshal, they must fall back on their assertion that Weil Gotshal's representation of its client ArthroCare would be "materially limited" by the firm's "responsibilities to another client, a former client or a third person" under Model Rule 1.7(a)(2). D.I. 15 at 12. In other words, Defendants believe Weil Gotshal should be disqualified because it cannot adequately represent *ArthroCare* in this lawsuit due to the confidentiality restrictions on its use of information exchanged during the Olympus/Gyrus Group transaction. This, however, is a claim that Defendants, who are not clients of Weil Gotshal, have no standing to assert because Weil Gotshal's client in this matter, ArthroCare, has fully consented. And in any event, Defendants' assertion of a material limitation on the representation fails on the merits.

The critical inquiry in determining whether an attorney's representation of a client will be "materially limited" under Rule 1.7(a)(2) is whether the difference in interests "will materially interfere with the lawyer's independent professional judgment in considering

17

alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Model Rule 1.7, cmt. 8; *see also In re Congoleum Corp.*, 426 F.3d 675, 688 (3d Cir. 2005) (explaining that a lawyer is materially limited in her representation of a client when her "ability to recommend or advocate all possible positions" is hindered). There is no such limitation here. Bobrow Decl. ¶ 9.

Defendants cite no case law, and we are aware of none, holding that a law firm's observance of confidentiality restrictions with respect to information it has received in transactional representation constitutes a material limitation on the ability of other lawyers in the firm to represent another client in an unrelated litigation matter. The only authority Defendants cite for this assertion is *Pennwalt Corp. v. Plough*, 85 F.R.D. 264 (D. Del. 1980), but the case does not stand for that proposition at all. In *Pennwalt*, the Court declined to disqualify the law firm, finding that even if the law firm did receive confidential information relating to an antitrust lawsuit, "it is unrealistic to conclude that any of the confidential information provided by [the client] is relevant to any issue in this Lanham Act litigation." 85 F.R.D. at 270-71. The case thus supports denial of disqualification here because Weil Gotshal did not receive any sensitive information regarding this patent infringement case, and in any event an effective screen was in place to ensure that no information exchanged in connection with the acquisition was shared with anyone working on the patent litigation. *See Nemours*, 632 F. Supp. at 428-29 (denying disqualification of law firm where "effective screening mechanism" was in place).

Implicit in Defendants' argument is the assumption that Weil Gotshal lawyers on the Olympus team will breach their confidentiality obligations and the Common Interest Agreement and share information with colleagues working on the ArthroCare matter, to the detriment of *Defendants*. But this is backwards, because the proper approach to ethical issues is

to "credit members of the legal profession with a certain level of integrity" and assume that they will protect confidences. *Nemours*, 632 F. Supp. at 428. Thus, in analyzing whether Weil Gotshal is materially limited in its ability to represent ArthroCare, the Court should assume that the firm's lawyers will abide by their confidentiality obligations.

There is no doubt the firm can effectively represent ArthroCare under these circumstances. Nothing stands in the way of Weil Gotshal evaluating the case, taking discovery from Defendants, making motions, preparing for trial, or trying the case, all of which it can do diligently and competently without access to any of the general information provided to other lawyers in the due diligence process. Accordingly, there is no material limitation under Model Rule 1.7(a)(2).

### 3.    Weil Gotshal Has No Fiduciary Duties to Defendants

Weil Gotshal does not owe any fiduciary duties to Defendants or to Gyrus Group, and is not, as Defendants assert, in a "position of trust." D.I. 15 at 14. Although Model Rule 1.7(a)(2) contemplates the possibility that a conflict of interest might arise due to a lawyer's obligation to a third party, Defendants cite no case law suggesting that confidentiality obligations arising from the conduct of due diligence against an *adverse* party in a business transaction create a conflict of interest that requires disqualification. None of the examples Defendants cite – lawyers' service as a trustee, executor, corporate director, or advisor – are applicable here. Weil Gotshal had no such role with respect to Gyrus Group in the Olympus transaction.

*Morrison Knudsen Corp. v. Hancock, Rothert & Banshoft LLP*, 69 Cal. App. 4th 223 (1999), does not support Defendants' position. The court there held that the test was not whether the lawyer had received information that "may appear to be useful" in connection with the allegedly conflicting representation, but whether the two representations are so substantially

related that information from the prior representation is "material" to the current one. Factors to consider are the legal and factual similarities between the two cases and the nature and extent of the attorney's involvement with the cases. *Id.* at 234. The lawyer in *Morrison Knudsen* had been employed by an insurer and in that capacity had monitored the defense of the corporate client in negligence lawsuits similar to the claim at issue. The court found a substantial legal and factual relationship between the cases. In this matter, however, Weil Gotshal did not participate in Gyrus Group's defense of any prior patent infringement claims, much less any claims that are substantially related to those asserted in this action.[8] Weil Gotshal had access to only very limited information about intellectual property matters as part of a corporate due diligence process. Weil Gotshal participated in no discussions regarding Gyrus Group's strategy or defense of the claims in this case. And, notwithstanding their vague assertions that Gyrus Group shared confidential and privileged information with Weil Gotshal, Defendants have not pointed to a single confidence shared that bears any direct or substantial relationship to this lawsuit. *See Carlyle Towers*, 944 F. Supp. at 351 (finding that representation of parent company on transactional matter was not substantially related to subsequent litigation against subsidiary because the lawyer "would have acquired no insight into [the parent or the subsidiary's] litigation philosophy or methods and procedures for conducting litigation defense"); *O'Neill v. GlobeSpan, Inc.*, No. 01-2936, 2001 U.S. Dist. LEXIS 23113, at *21 (C.D. Cal. Sept. 19, 2001) (finding that lawyer's representation of target company in stock-for-stock acquisition transaction was not substantially related to subsequent trade secret litigation, even though trade secret issues

---

[8]    Indeed, Weil Gotshal had been openly adverse to Gyrus Group subsidiaries on patent infringement claims since at least 1999. *See* p. 6, *supra*.

were "touched upon" in the acquisition, and declining to disqualify lawyer from representation adverse to acquiror).

### 4.    The Requirements of Model Rule 1.7(b) Are Satisfied

Even when a conflict exists under Model Rule 1.7(a), the lawyer still may represent a client if certain conditions are satisfied, and the threshold condition is that lawyer "reasonably believes" she will be able to provide "competent and diligent representation to each affected client." Model Rule 1.7(b)(1). It is Weil Gotshal's duty, not Defendants', to assess the circumstances and determine if it can competently and diligently represent ArthroCare. It has done so, and concluded that the confidentiality restrictions do not impair its ability to represent ArthroCare at all. Bobrow Decl. ¶ 9.

The three remaining requirements of Model Rule 1.7(b) are easily satisfied. There is no law prohibiting Weil Gotshal from representing ArthroCare in this case and Weil Gotshal is not representing clients on both sides of the "v" in this case, so clauses (b)(2) and (b)(3) plainly do not apply. And most significantly, once the issue arose Weil Gotshal acted appropriately with regard to each of the parties. ArthroCare has consented to Weil Gotshal's concurrent representation of ArthroCare in this case and Olympus in connection with the acquisition. Bobrow Decl. Ex. B. Weil Gotshal informed Olympus of the circumstances in writing and told Olympus that the firm would continue to represent ArthroCare in this case after the closing of the acquisition. Olympus accepted Weil Gotshal's recommendation that separate counsel conduct any necessary due diligence on the patent issues and continued to use Weil Gotshal to conclude the transaction (and still employs Weil Gotshal with respect to certain post-closing issues). Hamilton Decl. ¶¶ 8, 18. Likewise, Gyrus Group asked for and received from Weil Gotshal assurances of compliance with confidentiality restrictions and implementation of a

screen between the two teams, and continued to share information (although none about its defense of the lawsuit) with Weil Gotshal. This satisfies Model Rule 1.7(b)(4). *See Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 582 (D. Del. 2001) ("As a general matter, a client may expressly or impliedly waive his objection and consent to an adverse representation."); *In re Muma Servs., Inc.*, 286 B.R. 583, 588 (Bankr. D. Del. 2002) (same).

## C.    ArthroCare Would Be Prejudiced by Disqualification

Defendants are fully protected by the restrictions in the confidentiality letter and the Common Interest Agreement, and by the screens Weil Gotshal has established. ArthroCare, however, would be highly prejudiced by disqualification of its chosen counsel.

As Defendants concede, Weil Gotshal has long represented ArthroCare with respect to the patent at issue in this case. D.I. 15 at 16; Bobrow Decl. at ¶ 3. The Weil Gotshal patent team is familiar with the patent claims, the uses of the technology, and the arguments for and against infringement. It has litigated the '882 patent and others on behalf of ArthroCare in multiple litigations, including through a Federal Circuit appeal. Patent litigation is complex, and although this case involves only a single patent, it is not a simple case. Reexamination of the patent does not negate Weil Gotshal's long relationship with the client and its knowledge and expertise regarding this particular legal problem. Although some of the claims did change as a result of reexamination, others remained unchanged, and in any event this hardly means ArthroCare is starting from a "clean slate" and could replace its long-term patent litigation counsel without significant delay, cost, and forfeiture of substantial expertise.

Defendants knew about Weil Gotshal's roles in this case and in the Olympus transaction for two and one-half months before they filed this motion. In good faith, Weil Gotshal promptly screened the ArthroCare team from all information gathered in connection

with the Olympus transaction and confirmed that it would respect all confidentiality obligations. Gyrus Group's conduct left Weil Gotshal with the impression that it was satisfied with the steps Weil Gotshal had taken.  If Gyrus Group or its subsidiary Defendants were dissatisfied with Weil Gotshal's response to this issue, they could have raised those concerns sooner and remedied them before the Implementation Agreement even was signed on November 19, 2007. Defendants' decision to bring the disqualification motion now, months after becoming aware of the circumstances and after continuing to exchange information with Weil Gotshal pursuant to assurances of confidentiality and establishment of an effective screen to ensure none of was shared with anyone working on the ArthroCare representation, is a clear indicator that they are seeking disqualification to gain a tactical advantage in this lawsuit.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for disqualification.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ James W. Parrett, Jr. (#4292)*
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jparrett@mnat.com

*Attorneys for Plaintiff*
*ArthroCare Corporation*

*Of Counsel*:

Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
(202) 682-7000
adam.strochak@weil.com

Jared B. Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
jared.bobrow@weil.com

Nicholas Groombridge
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
nicholas.groombridge@weil.com

24

Kevin Kudlac
Cabrach J. Connor
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX 78759
(512) 349-1930
kevin.kudlac@weil.com
cabrach.connor@weil.com

Dated:  February 19, 2008
1600170

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard L. Horwitz
>David E. Moore
>POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on February 19, 2008 upon the following in the manner indicated:

Richard L. Horwitz                                        *VIA ELECTRONIC MAIL*
David E. Moore                                             *and HAND DELIVERY*
POTTER ANDERSON & CORROON LLP
1313 North Market Street
Hercules Plaza – 6th Floor
Wilmington, DE  19801

Darle M. Short                                            *VIA ELECTRONIC MAIL*
Thomas J. Pardini
Daniel A. Tanner, III
Daniel M. Schneider
Oliff & Berridge, PLC
277 S. Washington Street, Suite 500
Alexandria, VA 22314


*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)