IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARTHROCARE CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GYRUS MEDICAL, INC., GYRUS ENT, )<br>L.L.C., and GYRUS ACMI, INC., )<br>)<br>Defendants. ) | C.A. No. 07-729 (SLR) |

**ARTHROCARE CORPORATION'S SURREPLY BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

OF COUNSEL:

Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
(202) 682-7000

Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Nicholas Groombridge
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

Kevin Kudlac
Cabrach J. Connor
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway, Ste 1350
Austin, TX 78759
(512) 349-1930

Dated: March 11, 2008

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jparrett@mnat.com

*Attorneys for Plaintiff ArthroCare Corporation*

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| ARGUMENT | | 1 |
| A. | Weil Gotshal Has Not Represented A Client In A Matter Directly Adverse To Another Client | 1 |
| B. | Olympus Expressly Waived Any Purported Conflict | 2 |
| C. | This Lawsuit Is Not Substantially Related To The Olympus/Gyrus Group Acquisition | 5 |
| CONCLUSION | | 6 |

**INTRODUCTION**

ArthroCare Corporation ("ArthroCare") submits this surreply to the reply brief (D.I. 34) of defendants Gyrus Medical, Inc., Gyrus Ent, L.L.C., and Gyrus ACMI, Inc. (collectively, "Defendants") regarding their motion to disqualify Weil, Gotshal & Manges LLP ("Weil Gotshal"). In their reply papers, Defendants introduced new information that they contend requires disqualification of Weil Gotshal. This surreply, filed with Defendants' consent, addresses that new information.

**ARGUMENT**

**A.  Weil Gotshal Has Not Represented A Client In A Matter Directly Adverse To Another Client**

Defendants' reply fails to cure the key deficiency in their motion – the lack of any support in Model Rule 1.7 for their position that Weil Gotshal has a conflict of interest at all, much less one requiring the drastic remedy of disqualification. As set forth in ArthroCare's answering brief, Weil Gotshal is not representing one client in a matter "directly adverse to another client" under Model Rule 1.7(a)(1), and there is no risk that Weil Gotshal's representation of ArthroCare (in patent infringement litigation) will be "materially limited" by its representation of Olympus Corporation (in an acquisition), or vice versa, under Model Rule 1.7(a)(2). Indeed, Defendants do not even respond to the fact that Weil Gotshal is not materially limited in any way and now apparently rely exclusively on a purported direct conflict under Model Rule 1.7(a)(1) as the basis for disqualification.

The closing of Olympus Corporation's acquisition of Defendants' corporate parent Gyrus Group plc (which is not a defendant in this case) simply does not make *Defendants* clients of Weil Gotshal. Model Rule 1.7(a)(1) applies *only* to a representation of one client that is "directly adverse to another *client*." (Emphasis added.) Defendants cite no authority for their

theory that a law firm's representation of the acquiror in a corporate acquisition makes subsidiaries of the target of the acquisition "clients" of the law firm for conflicts purposes. And they cite no authority to contradict the commentary to the Model Rules, the ABA Formal Opinion, and the case law (all cited at page 16 of ArthroCare's Answering Brief, D.I. 24) holding that a law firm is not prohibited from representing a party adverse to a corporation merely because the law firm represents the corporation's parent company in an unrelated matter.

### B. Olympus Expressly Waived Any Purported Conflict

Because there is no conflict of interest under Model Rule 1.7(a)(1), the Court does not even have to reach the question of consent under Model Rule 1.7(b)(4). But we are compelled to address Defendants' lack of consent argument because it omits material facts. On February 29, 2008 – the date Defendants' reply brief was due – Weil Gotshal received from Olympus a letter stating, *for the first time*, that Olympus did not consent to Weil Gotshal's representation of ArthroCare in this lawsuit. The timing of that letter, coming more than three months after Olympus learned of Weil Gotshal's involvement in this lawsuit and a month after the closing of the Olympus/Gyrus Group transaction, obviously is no coincidence, as Defendants attached it as an exhibit to their reply papers filed the same day. Regardless of what prompted the letter, it must be viewed in the context of other documents that memorialize the relationship between Weil Gotshal and Olympus that Defendants did not include in the record.

Olympus retained Weil Gotshal pursuant to an engagement letter dated November 8, 2006. Hamilton Supp. Decl., Ex. A (filed herewith). In the engagement letter, Olympus expressly acknowledged that Weil Gotshal is a general service law firm representing numerous clients nationally and internationally, and presently or in the future may represent entities or persons adverse to Olympus and its affiliates in matters not substantially related to legal services

2

that Weil Gotshal was providing to Olympus.  The engagement letter likewise contains an express waiver of conflicts and specifically provides that Olympus will not assert Weil Gotshal's "actual, or possible, possession of confidential information belonging to Olympus or any of its affiliates [as] a basis to disqualify [Weil Gotshal] from representing another entity" in any matter not substantially related to a matter on which Weil Gotshal represents Olympus.  The exact text is:

> This firm is a general service law firm that Olympus recognize has represented, now represents, and will continue to represent numerous clients, nationally and internationally, over a wide range of industries and businesses and in a wide variety of matters.  Given this, without a binding conflicts waiver, conflicts of interest might arise that could deprive Olympus or other clients of the right to select WG&M as their counsel.  For example, when WG&M's financial restructuring and bankruptcy practice represents an entity in financial distress, WG&M could be called upon to act adversely to certain of that entity's numerous creditors, equity interestholders, or other parties in interest that may also be the firm's clients in unrelated matters.
>
> Thus, as an integral part of the Engagement, ***Olympus agrees that WG&M may, now or in the future, represent other entities or persons, including in litigation, adversely to them or any of their respective affiliates on matters that are not substantially related*** to (a) the legal services that WG&M has rendered, is rendering, or in the future will render to Olympus under the Engagement and (b) other legal services that WG&M has rendered, is rendering, or in the future will render to Olympus or any of their affiliates (an "Allowed Adverse Representation").
>
> Olympus also agrees that it will not, for itself or any other entity or person, assert that either (a) WG&M's representation of Olympus or any of its affiliates in any past, present, or future matter or (b) ***WG&M's actual, or possible, possession of confidential information belonging to Olympus or any of its affiliates is a basis to disqualify WG&M from representing another entity or person in any Allowed Adverse Representation.***  Olympus further agrees that any Allowed Adverse Representation does not breach any duty that WG&M owes to Olympus or any of its affiliates.

3

Hamilton Supp. Decl., Ex. A (emphasis added).

The prospective waiver of conflicts to which Olympus agreed is sufficient by itself to satisfy the informed consent requirement of Model Rule 1.7(b)(4). *See* ABA Formal Ethics Opinion 05-436 (stating that prospective waivers of future conflicts on matters not substantially related are enforceable). Weil Gotshal expressly advised Olympus that the firm might represent entities adverse to the interests of Olympus and its affiliates, *in litigation*, and Olympus waived any conflict of interest and expressly agreed not to seek disqualification of Weil Gotshal on the basis of any such representation. Olympus is a sophisticated party and the implications of the waiver, and the possibility that a conflict might arise, are plain from the text of the engagement letter. *See* Comment 22 to Model Rule 1.7 (stating that, "if the client is an experienced user of the legal services involved and is reasonably informed regarding the risk that a conflict might arise," prospective waiver may be enforceable). Furthermore, when the ArthroCare litigation commenced in November 2007, Weil Gotshal took immediate steps to screen the two teams from each other, informed Olympus of the specific circumstances, and expressly advised Olympus that the firm would continue to represent ArthroCare. Hamilton Supp. Decl. Ex. B. Olympus's response was to continue to use Weil Gotshal's services to consummate the transaction without objection, and even in its February 29, 2008 letter, Olympus states that it wants Weil Gotshal to continue to complete all work on the Gyrus transaction.

Olympus never indicated that it was not satisfied with Weil Gotshal's response to the circumstances, and its February 29 letter does not voice any concern that the screens put in place have not been effective. That Olympus now considers Weil Gotshal's representation of ArthroCare to be "adverse to the interests of Olympus" is no basis for disqualification because Olympus previously waived any objection to Weil Gotshal's representation of entities with

4

interests adverse to those of Olympus and its affiliates in litigation on matters not substantially related to the transaction that Olympus hired Weil Gotshal to do. Olympus's prospective waiver, coupled with conduct consistent with that waiver in continuing to employ Weil Gotshal on the Gyrus transaction after full disclosure of the ArthroCare litigation in November 2007, makes disqualification inappropriate even if the Court were to find a conflict of interest requiring consent.

### C. This Lawsuit Is Not Substantially Related To The Olympus/Gyrus Group Acquisition

Defendants also fail in their attempt to demonstrate that the Olympus/Gyrus Group acquisition is substantially related to this patent infringement lawsuit.[1] They point to general information allegedly conveyed to Weil Gotshal in the due diligence process, but still specify nothing that has any particular bearing on the claims asserted in this lawsuit and identify no information that would "materially advance" ArthroCare's position in this lawsuit. *See* Comment 3 to Model Rule 1.9 (matters are "substantially related" if they "involve the same transaction or legal dispute" or if there is a risk that "confidential factual information" exchanged in the first representation would "materially advance the client's position in the subsequent matter").

Instead, in an effort to shift to Weil Gotshal the burden of proving a negative and demonstrating that it never received any information related to this lawsuit, Defendants profess that neither they nor this Court know what information Weil Gotshal might have evaluated and analyzed. D.I. 34 at 6. But this is incorrect on multiple levels. First, Gyrus Group knows

---

[1] In point of fact, Defendants themselves argue this litigation "does not derive from the Olympus/Gyrus transaction" when they attempt to avoid the unequivocal language of the Common Interest Agreement stating that the parties thereto may not assert it as a basis for disqualification. D.I. 34 at 14.

5

exactly what information it conveyed to Weil Gotshal yet its subsidiaries have failed to point to a single fact, theory, or strategy that was shared that would compromise defendants' defense of this case in any way. *See* ArthroCare Answering Brief, D.I. 24 at 6-7 and Declaration of Ian Hamilton, D.I. 26 at ¶¶ 4-6. Second, if it has any concerns about confidentiality, Gyrus Group has the right to request the return of all due diligence information, which it still has not done. And finally, Weil Gotshal has no objection to disclosing to Defendants and to this Court its due diligence memoranda and the notes of members of the transaction team, which demonstrate that it received no information pertinent to this lawsuit, but it is precluded from doing so because it cannot reveal attorney-client communications or client confidences without consent. Olympus, presumably at Defendants' request, has declined to permit Weil Gotshal to disclose these materials. *See* Ex. 9 to D.I. 34 (letter from Olympus to Weil Gotshal declining request to permit disclosure of due diligence materials in connection with this motion).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for disqualification.

MORRIS NICHOLS ARSHT & TUNNEL LLP

*/s/ James W. Parrett, Jr.*
_____
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
klouden@mnat.com
jparrett@mnat.com

*Attorneys for Plaintiff*
*ArthroCare Corporation*

*Of Counsel:*

Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
(202) 682-7000

6

Jared Bobrow
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

Nicholas Groombridge
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
(212) 310-8000

Kevin Kudlac
Cabrach J. Connor
WEIL, GOTSHAL & MANGES LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX 78759
(512) 349-1930

Dated:  March 11, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

>Richard L. Horwitz
>David E. Moore
>POTTER ANDERSON & CORROON LLP

I further certify that I caused to be served copies of the foregoing document on March 11, 2008 upon the following in the manner indicated:

| | |
|---|---|
| Richard L. Horwitz<br>David E. Moore<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street<br>Hercules Plaza – 6th Floor<br>Wilmington, DE  19801 | *VIA ELECTRONIC MAIL*<br>*and HAND DELIVERY* |
| Darle M. Short<br>Thomas J. Pardini<br>Daniel A. Tanner, III<br>Daniel M. Schneider<br>Oliff & Berridge, PLC<br>277 S. Washington Street, Suite 500<br>Alexandria, VA 22314 | *VIA ELECTRONIC MAIL* |

*/s/ James W. Parrett, Jr.*
_____
James W. Parrett, Jr. (#4292)